UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| BLUE FORCE GEAR, INC.,<br>a Georgia Corporation,<br><br>        Plaintiff,<br><br>v.<br><br>CONCEALED CARRIER, LLC d/b/a<br>TACTICON ARMAMENT, a California<br>Limited Liability Company, and JACOB<br>DINES, Individually,<br><br>        Defendants, | Case No. 4:23-cv-00055-WTM-CLR |

**PLAINTIFF'S SUR-RESPONSE BRIEF REGARDING ITS MOTON FOR LEAVE TO FILE AN AMENDED COMPLAINT**

Plaintiff Blue Force Gear, Inc. ("BFG"), by and through the undersigned counsel, hereby provides its Sur-Response Brief to Defendants Concealed Carrier LLC d/b/a Tacticon Armament and Jacob Dines's ("collectively "Concealed") Sur-Reply to Plaintiff's Motion for Leave to File an Amended Complaint.  Concealed's Sur-Reply Brief is inappropriate, and thus requires response.[1]  Accordingly, the present rebuttal by Blue Force Gear's is respectfully submitted to assist the Court.

In summary, Concealed is a serial infringer[2], who has copied BFG's "Cross-X" trademark and BFG's product (BFG's product configuration trade dress).

---

[1] Blue Force Gear respectfully declines to be drawn into Concealed's invitation to join in Concealed's inflammatory briefing (*e.g*., "Trojan horse", "dupe the court", "pretext", "nonsensical", "Rule11", etc.).
[2] See, Exhibit A hereof, Complaint, filed June 16, 2023 in the case of *Crye Precision LLC v. Concealed Carrier, LLC d/b/a Tacticon Armament*, Case no. 1:23-cv-04469, presently pending before the EDNY.

1

In an attempt to distract from its conduct, Concealed resorts to accusations of "bad faith, all because BFG is lawfully attempting to protect its considerable capital investment (including, its intellectual property and sales) in this community. To date, Concealed has not shown any good faith willingness to compensate BFG for the substantial damages that Concealed has inflicted.

## I.     Concealed Does Not Show Prejudicial Delay.

There has been no discovery in this case. Indeed, the Rule 26(f) conference took place only a few days ago, (i.e., on July 24, 2023). Moreover, the Docket in this case demonstrates that the parties have been continuously engaged in settlement negotiations. Specifically, and at Concealed's request, BFG provided the professional courtesy of twice moving the Court for extensions of time <u>for Concealed</u> to file its answer. (*See,* Dkt. 14, 16). For example, in the motion of May 3, 2023, BFG's counsel stated, without objection, that:

> 4. Since April 5, 2023, counsel for the parties have been engaged in repeated settlement discussions to try and resolve the underlying matter and a short extension of time is necessary so that the parties have ample time to fully explore and attempt to reach an amicable settlement of this matter before engaging in further litigation. (*See,* Dkt. 16, filed 05/03/23, Exhibit C hereof).

Accordingly, Concealed's unsupported and belated contentions of "not put on notice", "undue delay", "bad faith", etc., etc. are without substance. (*See,* e.g., Dkt. 37, p.5)

## II.    Infringing Goods are Still Shown.

### a. Concealed (*i.e.*, "Tacticon Armament") Continues to Market and Advertise its Infringing Goods.

Concealed represents that it has supposedly ceased its infringement of BFG's "Cross-X" trademark. However, Concealed's copied product (as of today) continues to be marketed and advertised by Concealed on its "Tacticon Armament YouTubePage".

2



*See,* https://youtu.be/5_95BUh_oHOc (Accessed: 07/27/2023)

Additionally, Concealed continues to post marketing videos showing the infringing goods:

- https://youtu.be/I0gAjIEsC6Q (@18 secs; Concealed post -nine days ago).
- https://youtu.be/wkahIMNcEKA (@11 secs; Concealed post nine days ago).
- https://youtu.be/poHhTFUZBzo (@7 secs; Concealed post two weeks ago).
- https://youtu.be/TAlaO3xG7MQ (@43 secs; Concealed post four weeks ago).

b. **Concealed Sent its Infringing Product to Third Parties for Video Reviews.**

Concealed sent its infringing goods to Thin Line Defense Company for a video product review and the reviewer recognized Concealed's infringing product as a **Clone** of Blue Force Gear's product. The video is available for viewing at the time of filing this brief and has been viewed by nearly 10,000 viewers.

Thin Line Defense's Review.



*See*, https://youtu.be/04olmYeySdI

The product reviewer states: "The reviewed product is very similar to Blue Force Gear's Micro Trauma Kit Now. Like very similar. Like it's a clone."



*Id.*

The reviewer compared Concealed's infringing products with Blue Force Gear's product and concluded its "just as good and one-fifth of the price -- yeah that's awesome".

 *Id.*

Yet another product reviewer states Concealed's product is a "knock-off" of Blue Force Gear's.



*See*, https://youtu.be/Rtn5oDDQpDI.



> Today I'd like to talk about the best micro tram kit that knock-off I have ever seen. … AND IT IS THE EXACT SAME THING… they are exact same thing… they are indeed literally the same… The pull tabs are the same. The actual sleeve itself is the same. Same materials. Same structure. Looking at the inside, they can hold the same contents. And are pretty much set-up in the same way. Overall, guys, it's the same thing…. You can get four of these things for the price of one Blue Force Gear.

*Id.* for YouTube (text excerpt added).[3]

Accordingly, the facts indisputable demonstrate that Concealed infringing products are still being marketed, shown and advertised by Concealed and others.

    c. **The Prevailing Legal Standards.**

Federal Rules of Civil Procedure Rule 15(a) mandates that a court should freely give leave to amend when justice so requires. *See*, *Foman v. Davis,* 371 U.S. 178, 182 (1962). In reversing the court below, the Supreme Court held:

---

[3] Another YouTube video reviewer of the infringing product states "this product is a steal…the price tacticon has set – competitors sell their pouches for 3-4 times the price of Tacticon's". *See*, https://youtu.be/leISitGetkI

> Rule 15 (a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. See generally, 3 Moore, Federal Practice (2d ed. 1948), ¶¶ 15.08, 15.10. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules. ["If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.

*Id.* for Foman.

In light of Rule 15(a)'s liberal approach to granting leave to amend, the Eleventh Circuit requires a substantial reason to justify denial of leave to amend. *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008); *Shipner v. E. Air Lines, Inc.,* 868 F.2d 401, 407 (11th Cir. 1989); *Bryant v. Dupree,* 252 F.3d 1161, 1163 (11th Cir. 2001) (per curiam). Additionally, the Eleventh Circuit has noted that "the mere passage of time, without anything more, is an insufficient reason to deny leave to amend." Bryant v. Dupree, 252 F.3d 1161, 1164.

Rule 15(a) FRCP mandates that a court should freely give leave to amend when justice so requires and requires a substantial reason to justify denial of leave to amend. Additionally, the mere passage of time is an insufficient reason to deny leave to amend. Concealed cannot provide any such valid reason to deny Plaintiff's motion. Accordingly, the Court should grant Plaintiff's Motion for Leave to file an Amended Complaint.

d. **Concealed Cannot Claim Surprise.**

Concealed claims that BFG failed to provide proper notice to them. *See,* Dkt. 37, p. 5. But, however, BFG's original Complaint expressly puts Concealed on notice regarding the "the

Infringing Products" and specifically identified them as Concealed's "IFAK VI Bag and other similar products (e.g., the IFAK VI Compact). *See,* Complaint, Dkt. 1, ¶ 20). Additionally, BFG states that it generally owns trade dress on its products. Concealed does not present any rational arguments for purported "vagueness" here. *See*, Dkt. 37, pp. 2, 4, 5, 8, 10, and 11.

In BFG's Prayer for Relief, BFG demands the following relief:

> H. An order that all Infringing Products and labels, signs, packaging, advertising materials, or other materials that promote the Infringing Products or that otherwise enable Defendants to engage in infringement activities as described herein be delivered to BFG or seized for destruction.

*See,* Complaint, Dkt. 1, p. 14.

Concealed argues that a party is somehow to be forbidden from stating a new cause of action in an Amended Complaint. Concealed is wrong as a matter of law. Most instructive is the case of *United States ex rel. Schaengold v. Mem'l Health, Inc.,* No. 4:11-cv-58, 2014 U.S. Dist. Lexis 174977, 2014 WL 7272598 (S.D. Ga., Dec. 18, 2014):

> To be sure, Federal Rule of Civil Procedure 15(a)(2) allows leave for amendment to add new causes of action. *See Sperberg v. Firestone Tire & Rubber Co*., 61 F.R.D. 78, 79 (N.D. Ohio 1973) ("Requested amendments are liberally granted even when the amendment seeks to add an entirely new cause of action."); see also 3 Moore's Federal Practice § 15.02[1] (3d ed. 2011) ("Amendments may relate to either parties or claims and may serve such purposes as to add claims or defenses. . . ."). Therefore, merely asserting a new cause of action is not grounds for denying a request for leave to amend a complaint.

Indeed, Concealed's **continuing** infringement as described hereinabove fully justifies the assertion of a modified Section 43(a) Count. As demonstrated hereinabove, Concealed's statements and representations to the Court in its Answer that it has purportedly ceased its tortious conduct are false.

8

e.  **Concealed's Misleading "Unclean Hands" Pleading.**

In its Second Affirmative Defense, Concealed purports to plead "Unclean Hands", in representing:

> **Second Affirmative Defense: Unclean Hands**
>
> BFG further failed to communicate or negotiate with Tacticon in good faith after Tacticon voluntarily and out of an abundance of caution ceased sales of the products at issue…. BFG failed to communicate or negotiate with Tacticon in good faith even after Tacticon voluntarily and out of an abundance of caution **ceased sales** of the products at issue. *See, Dkt.* 18, p.8.

But, however, and as shown, *supra*, the actions of Concealed in continuing to **advertise and to display the infringing products** at issue constitutes unclean hands.

In essence, Concealed seeks to punish BFG for attempting to settle the matter by giving Concealed the opportunity to cease its infringement, and thereby to reduce its liability. Concealed has shown that it has no intent to do so, which has thereby prompted the necessity for the filing of an Amended Complaint.

f.  **To Assist the Court, BFG Will Withdraw its Count III for Georgia Statutory Trademark Infringement.**

BFG notes that O.C.G.A. § 10-1-451(b),[4] which is confined to injunctive relief, does <u>not</u> condition the grant of injunctive relief upon "registration". This language is in direct contrast to

---

[4] (b) Every person, association, or union of working men adopting and using a trademark, trade name, label, or form of advertisement may proceed by action; and all courts having jurisdiction thereof shall grant injunctions to enjoin subsequent use by another of the same or any similar trademark, trade name, label, or form of advertisement if there exists a likelihood of injury to business reputation or of dilution of the distinctive quality of the trademark, trade name, label, or form of advertisement of the prior user, notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services, except that this Code section shall not deprive any party of any vested lawful rights acquired prior to March 4, 1955. *See,* O.C.G.A. §§10-1-451(b).

the provisions of OCGA 10-1-451(a), which include monetary relief, and which specifically states: (**a**) Any owner of a trademark or service mark **registered under this part…**" (Emphasis added).

As a matter of law, distinct differences in statutory language cannot be deemed to be meaningless.  It is a fundamental rule of statutory construction that effect must be given, if possible, to **every part** of a statute, such that no provision will be inoperative, superfluous, void or insignificant. *Weinberger v. Hynson, Westcott and Dunning, Inc*., 412 U.S. 609, 633, 93 S.Ct. 2469, 2485, 37 L.Ed.2d 207 (1973); *Duke v. University of Texas at El Paso*, 663 F.2d 522, 526 (5th Cir.1981).

Nonetheless, in order to preserve the judicial resources of the Court, and inasmuch as the tortious conduct of Concealed can be adequately redressed under federal law, the Georgia state statutory count for trademark infringement (Count III hereof) is respectfully withdrawn, without prejudice.

    **g.   BFG Adequately Pleads its Count for Trade Dress Infringement.**

Concealed struggles to argue that supposedly BFG's pleading is inadequate.  Concealed is wrong.  Nonetheless, if the Court were to require an additional detailed pleading, BFG is perfectly willing to do so.

As the sister court stated in the case of RMS *Titanic, Inc. v. Zaller*, 978 F. Supp. 2d 1275, 1293 *et seq.* (ND GA 2013):

> **a. Distinctiveness**
>
> Plaintiffs allege that their protected trade dress includes "the total image and overall appearance" of their exhibit, including "size, shape, color or color combinations, lighting, design, texture, graphics, photographs, and narratives." (Am. Comp. ¶ 70). Plaintiffs describe their trade dress to include the font and lettering style of the exhibition name, the room choice and placement, lighting patterns on the floor, a "star drop" lighting curtain, and the design and placement of artifacts throughout

the exhibit.[5] (Pls.' Br. in Opp. at 7.) Plaintiffs allege that these specific features are unique to and have come to be associated with their Titanic exhibit— that is, Plaintiff's Titanic exhibit designs and features are "inherently distinctive or [have] acquired secondary meaning." *Dippin' Dots,* 369 F.3d at 1202. Having evaluated the particular facts alleged by Plaintiffs to support that their exhibit was distinctive or acquired secondary meaning, the Court finds that Plaintiffs have adequately and plausibly alleged distinctive trade dress.

### b. Non-functional

Plaintiffs argue that at this stage of the litigation, they are merely required to allege their trade dress is non-functional.[6]  The Court agrees.

***

### c. Confusion

Plaintiffs allege that Defendants continue to market their competing Titanic exhibit in the United States, including on the internet, to various venues where Plaintiffs also seek to operate. Plaintiffs also allege that Defendants promoted their exhibit at trade shows and conferences where Plaintiffs target consumers are in attendance, and marketed the Zaller Titanic Exhibit on the internet to all corners of the world. Plaintiffs have also sufficiently and plausibly alleged consumer confusion.

Whereupon, Judge Duffey concluded:

> The Court concludes that Plaintiffs have adequately pleaded a plausible claim for trade dress infringement, and Defendants' motion to dismiss for failure to state a claim is required to be denied. *See Iqbal,* 129 S.Ct. at 1949.

So it is here.  BFG's pleading fully complies with *Iqbal* and *Twombly* standards.  In good faith, BFG has alleged:

> 25. The packaging and other trade dress utilized by Defendants ("Defendants' Infringing Trade Dress") in connection with Defendants' IFAK V1 Bag, and other similar products, is substantially similar to BFG's Packaging Trade Dress and BFG's Product Configuration Trade dress used by BFG in connection with its MICRO TRAUMA KIT, and other medical-related gear products. In particular, the Defendants' Infringing Trade Dress materially duplicates BFG's Packaging Trade Dress and BFG's Product Configuration Trade Dress, in using: (a) two side panels stitched with single-line stitching on opposite sides of the designed cross places on the front of the pouch; (b) a

---

[5] (*i.e.*, similar to the identification of trade dress in BFG's proposed Amended Complaint)
[6] BFG's Trade Dress is non-functional. To the extent that the Court may require further pleading, BFG will promptly do so.

> belt-loop strap that connects the middle of each side of the pouch, also with single-line stitching like BFG's trade dress; (c) a nylon outer shell; and (d) the use of either a red, blue, or black cross identical to the '066 Trademark.
>
> 26. On information and belief, Defendants selected the elements of the Defendants' Trade Dress because they were highly similar to BFG's trade dress intentionally to cause consumer confusion with BFG and its medical-related gear products.
>
> 27. Defendants' use of the overall product design, look, and configuration that replicates the product design, look, and configuration of BFG's products, right down to the precise layout of stitching, use of colors, and other elements.
>
> 77. Through substantial marketing, promotion and advertising, the product configuration of BFG's first-aid kit bags and related products have acquired secondary meaning and have become in the minds of the relevant consuming public, and indicator of origin associated with BFG.
>
> 78. Defendants have created a knock-off copy of BFG's distinctive first-aid kit pouches without authority or permission from BFG.
>
> 79. Consumers ordering Defendants' knock-off copy of BFG's medical-related gear products utilizing BFG's Packaging Trade Dress and BFG's Product Configuration Trade Dress are likely to be confused into believing they are ordering BFG's medical-related gear products when in fact they are ordering a knock-off copy. Defendants' conduct constitutes a false representation of its goods.

*See,* Dkt. *31-1, ¶¶ 25-27* and 77-79.

Thus, BFG's pleadings are entirely adequate to provide due notice to Concealed of the charges against it.

### **Conclusion.**

BFG's motion to file an Amended Complaint is meritorious, should be granted, and the same is respectfully requested.

Dated: July 27, 2023

                              Respectfully submitted,

                              By: /s/ *Justin Charles Ward*
                                    Justin Charles Ward
                                    GA Bar No. 746408
                                    **BLUE FORCE GEAR, INC.**
                                    166 Pine Barren, Road
                                    Pooler, GA 31322
                                    Tel: (912) 667-6946
                                    Primary Email: justin@blueforcegear.com

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a true and correct copy of the foregoing <u>Plaintiff's Sur-Response Brief Regarding its Motion for Leave to File an Amended Complaint</u> has been furnished electronically on July 27, 2023 with the Clerk of the Court using CM/ECF. The undersigned also certifies that the foregoing document is being served this day on all counsel of record via e-mail.

                                                      By: <u>/s/ *Justin Charles Ward*</u>
                                                              Justin Charles Ward